*UNITED STATES DISTRICT COURT for the*
*SOUTHERN DISTRICT OF NEW YORK*
*-------------------------------------------------------------------x*
*GARY HOSKINS, as the PRESIDENT OF THE*
*MINIATURE AMERICAN SHEPHERD CLUB*
*OF THE UNITED STATES OF AMERICA,*                              *Index No. 1:24-cv-2428*
*and individually,*                                             *Docket No.*
*CAROL BRINSON, as the*
*VICE-PRESIDENT OF THE MINIATURE*                               *COMPLAINT*
*AMERICAN SHEPHERD CLUB OF THE*
*UNITED STATES OF AMERICA,*
*and individually, jointly and severely,*

                              *Plaintiffs,*

                  *-against-*


*DENNIS SPRUNG, as the PRESIDENT OF*
*THE AMERICAN KENNEL CLUB, INC.,*
*BRI TESARZ, as the DIRECTOR OF COMPLIANCE,*
*for THE AMERICAN KENNEL CLUB, INC.,*
*and GINA M. DINARDO*
*as the EXECUTIVE SECRETARY,*
*for THE AMERICAN KENNEL CLUB, INC,*


                          *Defendant's.*


*-------------------------------------------------------------------------x*

Plaintiffs, Gary Hoskins, as President of the Miniature American Shephard Club of the United Stated of America, Inc., and individually, together with Carol Brinson, as Vice-President of the Miniature American Shephard Club of the United States of America, Inc, and individually, hereby bring this action against Defendants: Dennis Sprung in his capacity as President of the American Kennel Club, Inc., Bri Tesarz, in her capacity as Director of Compliance for the American Kennel Club, Inc., and Gina M. DiNardo, in her capacity as Executive Secretary for the American Kennel Club, Inc., jointly and severely, and do hereby allege the following:


1.     Gary Hoskins as President of the Miniature American Shephard Club of the United States of America, Inc. (hereinafter referred to as "Hoskin") with the business address of 29743 Carlinville Cutoff Road, Girard Illinois 62640.

2.     Carol Brinson as Vice-President of the of the Miniature American Shephard Club of the United States of America, Inc. (hereinafter referred to as "Brinson") with business address is 29743 Carlinville Cutoff Road, Girard Illinois 62640.

3.     Dennis Sprung as President for the American Kennel Club, Inc. (hereinafter referred to as "Sprung") with the address of 101 Park Avenue, 5th Floor, New York, New York 10178.

4.    Bri Tesarz in her capacity as the Director of Compliance for the American Kennel Club, Inc. (hereinafter referred to as "Tesarz") with the address of 101 Park Avenue, 5th Floor, New York, New York 10178.

5.    Gina M DiNardo in her capacity as the Director of Compliance for the American Kennel Club, Inc. (hereinafter referred to as "DiNardo") with the address of 101 Park Avenue, 5th Floor, New York, New York 10178.

## BASIS FOR VENUE

6.    The Miniature American Shephard Club of the United States of America, Inc. (hereinafter referred to as "MASCUSA") is not-for profit membership club incorporated in the State of New York which does business in the State of New York through its affiliation with the American Kennel Club, Inc. (hereinafter referred to as the "AKC") as a Member Club. The AKC is not a membership organization in that it does not have members. The AKC is a not-for profit incorporated in the State of New York doing business as a purebred dog registry which registers purebred dogs and conducts dog show events through its licensed and member dog clubs.  The AKC's corporate headquarter is located at 101 Park Avenue, 5th. Floor, New York 10178.

7.    Plaintiff Hoskins is a member and President of MASCUSA a not-for-profit corporation incorporated in the State of New York that does business in New York.

8.    Plaintiff Brinson is a member and Vice-President of MASCUSA a not-for-profit corporation incorporated in the State of New York that does business in New York.

9.    Defendant Sprung is the President of the AKC a not-for-profit corporation incorporated in the State of New York that does business in New York with headquarters at 101 Park Ave, New York, New York.

10.    Defendant Tesarz is the Director of Compliance with the AKC a not-for-profit corporation incorporated in the State of New York that does business in New York whose headquarters are at 101 Park Ave, New York, New York.

11.    Defendant DiNardo is the Executive Secretary for the AKC a not-for-profit corporation incorporated in the State of New York that does business in New York whose headquarters are at 101 Park Ave., New York, New York.

12.    The actions alleged herein arise in the State of New York, County of New York.

## FIRST CAUSE OF ACTION
## TESARZ WAIVES BYLAWS

13.  These causes of action arise out of the filing and prosecution of two disciplinary actions filed against Plaintiff's Hoskins and Brinson in an attempt to overturn MASCUSA's elections for Vice-President.

14.  The first disciplinary complaint was filed by a MASCUSA member and AKC Delegate Sue Ritter (hereinafter referred to as "Ritter") who was running against Brinson for the office of Vice-President.  The Ritter complaint was filed pursuant to MASCUSA'S Constitution and Bylaws and entertained by certain members of MASCUSA's Board in Ritter's faction.

15.  The second disciplinary complaint was filed by a member of MASCUSA, Tina Winston (hereinafter referred to as "Winston") holding the position of club Treasurer, who filed a complaint on the MASCUSA's stationary against Hoskins to AKC, without approval by the Board of MASCUSA.

16.  Both complaints resulted in the suspension from membership and suspension from office for both defendants.

17.  Brinson, as a member of MASCUSA, was suspended from MASCUSA, thereby, invalidating her landslide victory as Vice-President over Ritter.

18.  Ritter filed the complaint against Brinson after she learned she had lost the election, then her faction on the MASCUSA Board entertained, heard and decided the disciplinary action suspending Brinson from membership and office.

19.  Hoskins believed the actions engaged in by Ritter violated Parliamentary Procedure and Robert's Rules of Order.

20.  MASCUAS's Bylaws mandate that the club adheres to Parliamentary Procedure and Roberts Rules.

21.  MASCUSA's Bylaws, in relevant part, provide:

### Article X Parliamentary Authority

**Section 1.  Parliamentary Authority.**  The rules contained in the current edition of Robert's Rules of Order, Newly Revised, shall govern the club in all cases to which they are applicable and in which they are not inconsistent with these bylaws and

any other special rules of order the club may adopt. (*Plaintiff's Exhibit "A" MASCUSA BYLAWS*).

22.    The AKC mandates that all Member Clubs adhere to Parliamentary Procedure and Roberts Rules.  Specifically, the AKC requires that Member Clubs adopt their approved bylaws.

23.    Hoskins, exercising his corporate duties of care, obedience and loyalty retained a Credentialed Parliamentarian to issue an Opinion letter on the legality of the disciplinary action. (*Plaintiff's Exhibit "B" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023).*

24.    The Parliamentary Opinion determined that the disciplinary action was, in fact, in violation of Parliamentary Procedure and Robert's Rules of Order.

25.    Hoskins reinstates Brinson as newly elected Vice-President.

26.    Ritter's faction on the board goes on to frustrate Brinson's performance of her duties as Vice-President.

27.    Brinson and Hoskins file an action in New York Supreme Court to determine the validity of the Parliamentary Opinion and disciplinary action which resulted in Brinson's suspension from membership and the office of Vice-President.

28.    Vincent A. Suba, representative for the opposing faction of MASCUSA first received the New York Supreme Court Complaint on October 31, 2023.

29.    Before the case could be heard by the court, Tesarz acts on Winston's complaint that was filed on September 27, 2022. Over a year had passed before AKC took any action on Winston's complaint.

30.    Tesarz was aware that the matter was before the courts.

31.    Tesarz entertains, heard and decided Winston's complaint suspending Hoskins from AKC, thereby, suspending his membership from MASCUSA and as President.

32.    Winston's complaint was neither signed nor notarized. Moreover, upon information and belief, the AKC mandatory filing fee for the complaint appears to have been waived by Tesarz.

33.   Hoskins was not served with the complaint.

34.   The action brought in New York Supreme Court had been filed, however, not served in light of settlement discussions between legal counsel. Tesarz, aware that the matter was before the court entertained jurisdiction over a year-old complaint to suspend Hoskins.

35.   Hoskins has been immediately and irreparably damaged by Tesarz's arbitrary and capricious waiver of the MASCUSA Bylaws which resulted in his suspension.

36.   Hoskins has been immediately and irreparably damaged by Tesarz's arbitrary and capricious waiver of the AKC's Charter and Bylaws which resulted in his suspension.

37.   Hoskins prays for relief from the court to redress the injury he has sustained, as a member, and as President of MASCUSA, resulting from Tesarz arbitrary and capricious waiver of Parliamentary Procedure and Roberts Rules which are mandated under both MASCUSA Constitution and Bylaws and AKC's Charter, Bylaws, Rules and Regulations.

## SECOND CAUSE OF ACTION
## <u>TESARZ WAIVES BYLAWS</u>

38.   Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37 with the same force and effect as if fully set forth herein.

39.   Brinson has been immediately and irreparably damaged by Tesarz's arbitrary and capricious waiver of the MASCUSA Bylaws which resulted in her suspension.

40.   Brinson has been immediately and irreparably damaged by Tesarz's arbitrary and capricious waiver of the AKC's Charter and Bylaws which resulted in her suspension.

41.   Brinson prays for relief from the court to redress the injury she has sustained, as a member, and as Vice-President, resulting from Tesarz arbitrary and capricious waiver of Parliamentary Procedure and Roberts Rules which are mandated under both MASCUSA Constitution and Bylaws and AKC's Charter and Bylaws, Rules and Regulations.

## THIRD CAUSE OF ACTION
## TESARZ IGNORES PARLIAMENTARY OPINION

42. Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, and 39 through 41 with the same force and effect as if fully set forth herein.

43. AKC is a not-for-profit dog registry incorporated in the State of New York.

44. MASCUSA by virtue of its Constitution and Bylaws is recognized as a Member Club of the AKC and, therefore subject to the Charter and Bylaws of the AKC. *(Plaintiff's Exhibit "C" AKC's Charter and Bylaws)*.

45. To become a Member Club, MASCUSA was required to satisfy the terms and conditions of Affiliation with the AKC, as a Member Club, one of which was procurement and adoption of a Constitution and Bylaw approved by AKC. The Constitution and Bylaws are of a standard form template, providing standard form paragraphs addressing numerous provisions including, but not limited to, Membership, Discipline and the individual members relationship to the AKC. Specifically, that a MASCUSA member's suspension from the rights and privileges from the AKC results in an automatic suspension from MASCUSA. To become a member in the Member Club, in this case MASCUSA, the member must agree to abide by the Charter and Bylaws of the AKC and the Constitution and Bylaw of the Member Club. The member, therefore, agrees to the jurisdiction of both the AKC and the Member Club in the application of both the Charter and Bylaws of the AKC and the Constitution and Bylaws of the Member Club, in this case MASCUSA.

46. The Charter of the AKC provides in relevant parts that:

> "**SECTION 1**. William G. Rockefeller, Dwight Moore, Howard Willets, B.S. Smith, Marcel A. Viti, Frederick H. Osgood, John E. De Mund, Clair Foster, Laurence M.D. McGuire, Henry Jarrett, August Belmont, William B. Emery, Edward Brooks, Charles W. Keyes, James W, Appleton, George B. Post, Jr., Thomas Cadwalader, Winthrop Rutherfurd, James Mortimer, George Lauder, Jr., William Rauch, Samuel R. Cutler, John G. Bates, J. H. Brookfield, Chetwood Smith, Hildreth K. Bloodgood, Singleton Van Schaick, Hollis H., Hummewell, J. Segreant Price and William C. Codman, and all other persons, corporations, associations and organizations as shall hereafter become associated with them as members, as may be provided for by the constitution or bylaws, under and for the purpose of this charter and act of incorporation , are hereby organized and constituted a body corporate and are a corporation under and by name of the American Kennel Club."

47. Based on the contractual relationship between the AKC and its Member Clubs through its grant of Member status, the AKC can exercise jurisdiction over the members of the Member Club. This grant also extends to its Officers and Directors. Hence, not-for-profits incorporated in any State in the Union become subject to the AKC's Charter,

Bylaws, Rules and Regulations. State Statutes like New York Not-For Profit Statute 706 and 714, which govern the removal of Officers and Directors are, arguably, preempted by the Member Club's contractual relationship with the AKC through the AKC's mandated Bylaws.

48.    Due to the mutuality of the contractual relationship, the AKC can enforce the application of the Member Club's Constitution and Bylaws against the Member Club just as the Member Club can enforce the application of the AKC's Charter and Bylaws against the AKC.

49.    Due to the extension of this mutuality of contract, a member of the Member Club can also enforce the application of AKC's Constitution and Bylaws against AKC just as they can against the Member Clubs application of its Constitution and Bylaws.

50.    Brinson, a member of the Board of the MASCUSA, resigned her position as Director to run in the upcoming elections for the position of Vice-President. After the closing date for voting in said elections, AKC Delegate Suzanne Ritter (hereinafter referred to as "Ritter") who was running against Brinson for the position of Vice-President learned from a friend tasked with counting the votes that Brinson had won the elections by a landslide.  In a desperate attempt to overturn the election results Ritter filed a Disciplinary Complaint under Article VI of the MASCUSA Bylaws alleging Brinson "knowingly lied about herself and her opponent", "aired Board Matters publicly without permission", "that … "Brinson's" insistent and public lies on Facebook had been detrimental to the Club", and, finally that "Brinson" missed 30-40% of the board meetings".  Clearly, Ritter by engaging in this conduct was making a desperate attempt to overturn the elections.  Ritter filed complaint not just against Brinson, but against two of her supporters Teresa Hunt, and Monica Rinehart. Having filed the complaints, Ritter persuaded her faction on the Board to form a Disciplinary Committee to suspend Brinson as a member from the club, and, thereby, remove her as the newly elected Vice-President.  With the removal of Brinson as a member Ritter would then become Vice-President despite the fact, she had lost the elections by a large margin.

51.    Plaintiff Hoskins, as President of MASCUSA concerned over the legality of the Disciplinary Action disrupting the club's elections retained the parliamentary services of Russell A. Guthrie, PRP, a Parliamentarian known to the sport of purebred dogs as an expert on Parliamentary Procedure and Roberts Rules of Order.  Parliamentarian Guthrie conducted a thorough review of the MASCUSA Bylaws, Minutes and Complaint issuing an Opinion Letter on the legality of the disciplinary action. It was Parliamentarian Guthrie's Opinion that the disciplinary action was, in fact, illegal. (*Plaintiff's Exhibit "D" Russell A. Guthrie Parliamentarian, PRP, Opinion letters, dated December 16, 2023, January 30, 2024 and March 21, 2024, , Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

52.   The MASCUSA Bylaws dealing with disciplinary actions state:

> "Any member may prefer charges against a member for alleged misconduct prejudicial to the best interests of the club or the breed. Written charges with specifications must be filed in duplicate with the Recording Secretary together with a deposit of $250, which shall be forfeited if such charges are not sustained by the board or a committee following a hearing. Disciplinary hearings may be held via teleconference in accordance with Article II Section 3 of these bylaws. The Recording Secretary shall promptly send a copy of the charges to each member of the board or present them at a board meeting, and the board shall first consider whether the actions alleged in the charges, if proven, might constitute conduct prejudicial to the best interests of the club or the breed. If the board considers that the charges do not allege conduct which would be prejudicial to the best interests of the club or of the breed, it may refuse to entertain jurisdiction. If the board entertains jurisdiction of the charges, it shall fix a date of a hearing by the board or a committee of not less than three members of the board, not less than three (3) weeks nor more than six (6) weeks thereafter. The Recording Secretary shall promptly send one copy of the charges to the accused member by certified mail (return receipt requested) together with a notice of the hearing stating that the defendant is required to attend and may bring witnesses, if he/she wishes. Also, the Recording Secretary shall promptly send the complainant notice of hearing stating that the complainant is required to attend and may bring witnesses, if he/she wishes. The Board itself may prefer charges against a member for cause, in which case it shall provide written charges with specifications to the Recording Secretary, who shall promptly send a copy of the charges to the accused member by certified mail (return receipt requested), with a notice of the hearing as set forth above.

53.   MASCUSA ultimately recognized Brinson as the duly elected Vice-President by overwhelming vote of the membership. Brinson assumed the office of Vice-President.

54.   AKC Delegate Ritter continued to engage in a pattern of conduct to block Brinson's participation as Vice-President. Ritter hired her own Parliamentarian, Barbara Proctor to issue an Opinion letter. The Opinion issued by Barbara Proctor is limited in scope and failed to address the illegalities of the disciplinary action. Hoskins, therefore, again presented Guthrie's Parliamentary Opinion. It was ignored by Ritter's faction. Ritter then, had a second Parliamentary Opinion letter issued by her Parliamentarian. It was brief, and, again, did not address the legality of the disciplinary action. *(Plaintiff's Exhibit "E" Parliamentarian Barbra Proctor, PRP, Opinion letters, dated February 22, 2023 and March 2, 2023).*

55.   Hoskins and Brinson respond to the frustration of Brinson's election by filing an action in New York Supreme Court. The court case is filed to addressed the attempted removal of Brinson. *(Plaintiff's Exhibit "F" Summons and Complaint, New York Supreme Court, Index No. 900766-24).*

56.     Tina Winston, acting as Treasurer of MASCUSA, (hereinafter referred to as "Winston") drafted and filed a complaint against Hoskins demanding his suspension from the AKC. The grounds for the complaint were that Hoskins violated MASCUSA's Constitution and Bylaws and AKC's Charter and Bylaws.

57.     Winston submitted the complaint to Tesarz, who upon reviewing the complaint she helped draft, interpreted the MASCUSA Constitution and Bylaws to issue an opinion letter that Hoskins had violated the Bylaws of MASCUSA, imposing a suspension from AKC pursuant to AKC's Charter and Bylaws (Amended June 13, 2023; AKC Discipline Guidelines (December 1, 2022). Tesarz ignored all the Parliamentary Opinions, and, instead crafted her own opinion that contradicted all the Parliamentary Opinions. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

58.     Legal Counsel for the AKC, Heather McManus, and Tesarz were advised that a filing of a Complaint had been made in New York Supreme Court to determine the legality of the disciplinary hearing in light of the Parliamentary Opinions.

59.     Legal Counsel for the AKC, Heather McManus, and Tesarz were advised that two additional Parliamentarians had been retained to review Parliamentarian Guthrie's Opinion on the legality of the disciplinary hearing.  The first Parliamentarian conducting the review was the former National Association of Parliamentarians Professional and Member Disciplinary Advisor, the second is the National Association of Parliamentarians Parliamentarian who also advises the House of Representatives in the State of Oklahoma.

60.     Both experts agree with Parliamentarian Guthrie's Opinion that the disciplinary action was illegal. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

61.     Tesarz ignored the expert testimony in her analysis of the Bylaws. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

62.     Tesarz ignored the legal opinion of an attorney licensed in the State of New York with forty years' experience in not-for-profit dog club disciplinary actions in her analysis of the Bylaws.  (*Plaintiff's Exhibit "F" New York licensed Attorney, Nancy Ferguson-Guttenberg, Esq, Complaint*)

63.      Member Clubs are mandated by AKC to adopt AKC approved Bylaws that require the application of Roberts's Rules of Order and Parliamentary Procedure.  AKC made no exceptions in the Bylaws to this mandate. (*Plaintiff's Exhibit "A" MASCUSA Bylaws*).

64.     Upon information and belief, Tesarz is not a Parliamentarian nor an attorney licensed in the State of New York. Yet, by virtue of her title as "Director of Compliance" she believed that she was qualified to totally waive the Bylaw mandate that Parliamentary Procedure and Robert's Rules of Order be followed. Tesarz disregarded the determination of three nationally recognized experts on Bylaw interpretation applying Parliamentary Procedure. In doing so, Tesarz unilaterally suspended the rights and privileges of a MASCUSA member, thereby removing a duly elected President of a not-for-profit incorporated in the State of New York.

65.     Tesarz suspended Hoskins membership from MASCUSA due to a provision in the MASCUSA Bylaws that a suspension from AKC results in an automatic suspension from a member in an AKC Member Club.

66.     Tesarz's conflicted conduct as the Director of Compliance violates the AKC Charter and Bylaws. (*Plaintiff 's Exhibit "C" AKC's Charter and Bylaws.*)

67.     Tesarz went one step further assisting in the complaint presented on Appeal to the AKC Trial Board reviewing the suspension.  The complaint now prepared, cites to Hoskins committing a total of 11 MASCUSA Bylaw violations all based on Tesarz's fundamental misinterpretation of Parliamentary Procedure and Roberts Rules of Order.

68.     Plaintiff Hoskins has been damaged by Tesarz's arbitrary and capricious waiver of the MASCUSA Bylaws mandate that Parliamentary Procedure and Roberts Rules be applied together with her misinterpretation of the MASCUSA Bylaws as applied to disciplinary actions under AKC Charter and Bylaws.

69.     Plaintiff Hoskins respectfully requests relief from the court to redress the damage to his performances of the duties of President of MASCUSA caused by Tesarz;s arbitrary and capricious waiver of Parliamentary Procedure, Roberts Rules for misapplication of the MASCUSA Bylaws in violation of AKC's Charter and Bylaws.

## FOURTH CAUSE OF ACTION
## <u>TESARZ FAILURE TO CONDUCT AN INVESTIGATION</u>

70.    Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, and 43 through 69 with the same force and effect as if fully set forth herein.

71.    Tesarz failed to conduct a disciplinary investigation as mandated by Section 2 of AKC's Charter and Bylaws states (*Plaintiff's Exhibit "C" AKC's Charter and Bylaws*)

> "The objects of the corporation shall be to adopt and enforce uniform rules regulating and governing dog shows and field trials, to regulate the conduct of persons interested in exhibiting, running, breeding, registering, purchasing and selling dogs, to detect, prevent and punish frauds in connection therewith, to protect the interests of its members, to maintain and publish an official stud book and an official kennel gazette, and generally to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs. And for these purposes it shall have power to adopt a constitution, bylaws, rules and regulations, and enforce the same by fines and penalties, which it shall have the right to collect and enforce by suit, or by suspension or expulsion from membership, or by a suspension or denial of any or all of the privileges of said corporation. It may, from time to time, alter, modify or change such constitution, bylaws, rules or regulations."

72.    In the letter Complaint that was submitted to Tesarz on September 27, 2022, Winston alleged that Hoskins had engaged in conduct that violated MASCUSA's Constitution and Bylaws. Upon review of Winston's letter, it is apparent to any reasonable person that Winston did not comprehend the application of Parliamentary Procedure and Roberts Rules of Order or their application to of MASCUSA's Constitution and Bylaws.

73.    It is the duty of Tesarz to, upon submission of a complaint, ensure that the complainant has complied with all procedural requirements for submission. In the present case, Winston failed to sign or notarize the complaint submitted to Tesarz. This was just the first of many procedural errors committed by Tesarz. The second procedural error was that Tesarz never provided Hoskins with a copy of the complaint. There is nothing in the record to support the allegation that Hoskins used "inappropriate, abusive, and foul language". Clearly, Tesarz failed in her duty, upon submission of a complaint to compliance, to investigate the allegations made in the complaint. It is clear from the charges made against Hoskins in Tesarz's suspension that no such investigation was conducted. Instead, Tesarz apparently adopted all statements made by Winston in her complaint as fact without substantiation. A full investigation as is required under AKC's Charter and Bylaws cited above, would have established that it was, in point of fact, Winston that misinterpreted the MASCUSA Constitution and Bylaws.

74.    It is clear from the original complaint filed by Winston that Tesarz took it upon herself to conduct a biased investigation given the fact that nowhere in Winston's complaint is it alleged that Hoskins made the statement "**Shut Up**". (*Plaintiff's Exhibit "I" DiNardo*

*letter dated March 11, 2024)* No where in Winston's Complaint is it alleged that Hoskin made the statement "**Shut Up**". *(Plaintiff's Exhibit "H" Winston AKC Complaint)*

75.   Tesarz cited as the basis for the charge that Hoskins used "**inappropriate, abusive, and foul language**" did not produce a transcript of the Zoom meeting. The minutes did not reflect any "**inappropriate, abusive, and foul language**".

76.   Winston had ample time to amend the minutes to reflect Hoskins's use of "**inappropriate, abusive, and foul language**" and failed to do so. It is Tesarz that simply made the conclusion based upon Winston's complaint that Hoskins collective conduct that Winston characterized as disrespectful constituted "**inappropriate, abusive, and foul language**".

77.   Tesarz failed to conduct an investigation of the meeting cited as the basis for the charge that Hoskins used "**inappropriate, abusive, and foul language**" and did not use AI as is standard practice to have zoom board meetings transcribed.

78.   Tesarz failed to conduct an investigation of the meeting forming the basis for the charge of "**inappropriate, abusive, and foul language**" did not produce the board approved minutes, relying instead only on Winston's complaint.

79.   Tesarz failed to conduct her investigation of the meeting forming the basis for the charge of "**inappropriate, abusive, and foul language**" failed to even consider Hoskins or board members testimony other than Winston's complaint.

80.   Tesarz failed to create a credible record to establish grounds upon which to make a complaint for Hoskins use of "**inappropriate, abusive, or foul language**", thereby, violating AKC's Charter and Bylaws.

81.   Tesarz failed to create a credible record to establish grounds upon which to make a complaint for Hoskins use of "**inappropriate, abusive, or foul language**", thereby, violating MASCUSA's Constitution and Bylaws.

82.   Tesarz failed to correctly apply Parliamentary Procedure and Roberts Rules in alleging that Hoskins used "**inappropriate, abusive or foul language**", thereby, violating MASCUSA's Constitution and Bylaws.

83.   In addition, Winston acted without Board vote in filing the complaint.  If a complaint was to be filed by the MASCUSA Board it would have been submitted by the Corresponding Secretary to the AKC after a vote of the Board Winston filed a complaint for violations of Constitution, Bylaws, Parliamentary Procedure and Robert's Rules of Order. Her actions though, were in violation of the Constitution and Bylaws of MASCUSA for her failure to receive authorization from MASCUSA to file the Complaint, and further using MASCUSA's stationary to file the Complaint as Treasurer for MASCUSA. Despite Winston's violations Tesarz entertains the complaint against Hoskins. (*Plaintiff's Exhibit "D", Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16,*

*2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

84.   Tesarz, failed to correctly apply Parliamentary Procedure and Roberts Rules in alleging that Hoskins used "**inappropriate, abusive, or foul language**", thereby, violating AKC's Charter and Bylaws. (*Plaintiff's Exhibit "D', Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

85.   Hoskins, as President of the MASCUSA, has sustained immediate and irreparable damage from Tesarz's failure to follow procedure and conduct an investigation, thereby, violating AKC's Charter and Bylaws abridging Hoskins rights and privileges as President of MASCUSA and with AKC.

86.   Plaintiff Hoskins respectfully request relief from the court to redress the damage to his performances of the duties of President of MASCUSA caused by Tesarz arbitrary and capricious failure to investigate, waiver of Parliamentary Procedure and Roberts Rules, and misapplication of the MASCUSA Bylaws in violation of AKC's Charter and Bylaws.

## FIFTH CAUSE OF ACTION
## <u>TESARZ FAILS TO EXERCISE DUE DILEGENGE</u>

87.   Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, and 71 through 86 with the same force and effect as if fully set forth herein.

88.   Tesarz failed to conduct a disciplinary investigation as mandated by Section 2 of AKC's Charter and Bylaws states:

> "The objects of the corporation shall be to adopt and enforce uniform rules regulating and governing dog shows and field trials, to regulate the conduct of persons interested in exhibiting, running, breeding, registering, purchasing and selling dogs, to detect, prevent and punish frauds in connection therewith, to protect the interests of its members, to maintain and publish an official stud book and an official kennel gazette, and generally to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs. And for these purposes it shall have power to adopt a constitution, bylaws, rules and regulations, and enforce the same by fines and penalties, which it shall have the right to collect and enforce by suit, or by

suspension or expulsion from membership, or by a suspension or denial of any or all of the privileges of said corporation. It may, from time to time, alter, modify or change such constitution, bylaws, rules or regulations."

89.   In the letter Complaint submitted to Tesarz, Winston alleged that Hoskins had engaged in conduct that violated MASCUSA's Constitution and Bylaws. Upon review of Winston's letter, it is apparent to any reasonable person that Winston did not comprehend the application of Parliamentary Procedure and Roberts Rules of Order to the interpretation of MASCUSA's Constitution and Bylaws. *(Plaintiff's Exhibit "H" Winston AKC Complaint, dated September 27, 2022*).

90.   It is the duty of Tesarz, upon submission of a Complaint to exercise due diligence in conducting the investigation to ensure that the Complainant has complied with all procedural requirements for submission. In the present case, Winston failed to even sign or notarize the Complaint. (*Plaintiff's Exhibit "H" Winston AKC Complaint, dated September 27, 2022).

91.   This was just the first of many procedural errors committed by Tesarz. The second procedural error was that Tesarz never provided Hoskins with any copies of the Complaint or Exhibits. There is nothing in the record to support the allegation that Hoskins used "**inappropriate, abusive, and foul language**". Clearly, Tesarz failed in her duty, upon submission of a Complaint to compliance, to investigate the allegations made in the Complaint. It is clear from the charges made against Hoskins to support Tesarz's suspension that no investigation was conducted. Instead, Tesarz apparently adopted all statements made by Winston in her Complaint, as fact, without substantiation and failed to fully investigate as is required under AKC's Charter and Bylaws as cited above.  Had Tesarz exercised due diligence in the conduction of her investigation, it would have established to any reasonable person that Winston that misinterpreted the MASCUSA Constitution and Bylaws. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

92.   It is clear from the original Complaint filed by Winston that Tesarz took it upon herself to conduct a biased investigation given the fact that nowhere in Winston's Complaint is it alleged that Hoskins made the statement "**Shut Up**". (*Plaintiff's Exhibit "H" Winston AKC Complaint).*

93.   There is nothing in Winston's illegal complaint that Hoskins made the statement "**I'll bring you up on charges**". (*Plaintiff's Exhibit "H" Winston AKC Complaint).*

94.     Tesarz, cited as the basis for the charge that Hoskins used "**inappropriate, abusive, and foul language**" did not produce a transcript of the Zoom meeting. The minutes did not reflect any "**inappropriate, abusive, and foul language**".

95.     Winston had ample time to amend the minutes to reflect Hoskins's use of "**inappropriate, abusive, and foul language**" and failed to do so. It is Tesarz that simply made the conclusion based upon Winston's Complaint that Hoskins' collective conduct that Winston characterized as disrespectful constituted "**inappropriate, abusive, and foul language**".

96.     Tesarz failed to use due diligence in substantiating Winston's claim that Hoskins used "**inappropriate, abusive, and foul language**" relying only on the complaint that was filed.

97.     Tesarz failed to use due diligence in substantiating that Hoskins used "**inappropriate, abusive, and foul language**". Tesarz did not review the board approved minutes, relying instead only on Winston's complaint.

98.     Tesarz failed to use due diligence in substantiating that Hoskins used "**inappropriate, abusive, and foul language**". Tesarz failed to even consider Hoskins' or other board members testimony, relying solely on Winston's complaint that was filed in September of 2022.

99.     Tesarz failed to use due diligence by not creating a credible record to establish grounds upon which to make a complaint for Hoskins use of "**inappropriate, abusive, or foul language**", thereby, violating AKC's Charter and Bylaws.

100.    Tesarz failed to create a credible record to establish grounds upon which to make a complaint for Hoskins' use of "**inappropriate, abusive, or foul language**", thereby, violating and Bylaws.

101.    Tesarz failed to correctly apply Parliamentary Procedure and Roberts Rules in alleging that Hoskins used "**inappropriate, abusive or foul language**", thereby, violating MASCUSA's Constitution and Bylaws.

102.    Tesarz failed to correctly apply Parliamentary Procedure and Roberts Rules in alleging that Hoskins used "**inappropriate, abusive, or foul language**", thereby, violating AKC's Charter and Bylaws.

103.    Hoskins as President of the MASCUSA, has sustained immediate and irreparable damage from Tesarz's failure to exercise due diligence and follow proper procedure in conducting an investigation as Director of Compliance for AKC, resulting in the abridgement of Hoskins' rights and privileges as President of MASCUSA and the AKC.

104.    Hoskins prays for relief from the court to redress the injury he has sustained, as a member and as President, resulting from Tesarz's arbitrary and capricious failure to exercise the

due diligence a reasonable person would use in conducting an investigation under AKC's Charter and Bylaws, Rules and Regulations.

**SIXTH CAUSE OF ACTION**
**TESARZ'S BREACHES HER**
**DUTY OF CARE, OBEDENCE AND LOYALTY TO**
**VICE-PRESIDENT BRINSON**

105.   Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, and 88 through 104 with the same force and effect as if fully set forth herein.

106.   Both the AKC and MASCUSA are incorporated in the State of New York as not-for-profit corporations.  As such they receive special entity recognition with the Federal Governments Internal Revenue Service, the State of New Yorks Department of Taxation and Finance, and the New York City Department of Finance.  Indeed, each Member Club of the AKC incorporated as a not-for-profit has the opportunity to receive exempt entity status in the State of Incorporation and with the Internal Revenue Service.

107.   Although the AKC and MASCUSA, through corporate structuring and contractually related Bylaws, circumvented State Not-For-Profit Statutes pertaining to the removal of Officers and Directors, they are still subject to the corporate standard of Duty of Care, Obedience and Loyalty.

108.   The New York State Corporate Not-for-Profit Statutes governing not-for-profit corporations impose these duties on each not-for-profit incorporated in the State.  These duties cannot be preempted through mutual contract.  Hence, both the AKC and MASCUSA are required to exercise the duties of care, obedience and loyalty in the execution of their Charter, Constitution and Bylaws.

109.   The duties of care, obedience and loyalty are imposed on each Officer, Director, Employee and member performing volunteer services on behalf of the not-for-profit.

110.   Ritter is a member of MASCUSA.  In addition, she serves as the MASCUSA club's AKC Delegate.

111.   The MASCUSA By-Law addressing the duties of Delegate state:

> **Section 4.**  American Kennel Club Delegate.  The club shall elect, from its membership, a Delegate to the American Kennel Club, whose qualifications are consistent with the Constitution and Bylaws of the American Kennel Club.  The Delegate shall be elected in the same manner as the Officers and Directors as described in Article IV and shall be a member in good standing for a minimum of two years at the term of nomination.  The Delegate to the American Kennel Club

is not a member of the Board although he/she can be elected as well and serve concurrently as an Officer or Director of the Board.

112. As provided in MASCUSA's Constitution and Bylaws a Delegate can run for election to the board serving concurrently as an Officer or Director of the Board.

113. Ritter ran in the MASCUSA elections for the position of Vice-President against Brinson.

114. When running against Brinson, Ritter stated to Brinson that AKC employees Tesarz, Director of Compliance and Mary Beth O' Neil, Vice-President of Sports Services were personal friends.

115. Brinson interpreted this statement as a threat that if she continued to run against Ritter for the Office of Vice-President there would be repercussions from AKC.

116. After the MASCUSA elections days were closed and tallied, Ritter gained access to the results before the Board of the MASCUSA, and learned that Brinson had won by a landslide.

117. In response to the news that she had lost the elections, Ritter filed a Disciplinary action pursuant to MASCUSA Bylaws Article VI against newly elected Brinson in an attempt to remove her from office.

118. Ritter then recruited her faction on the Board to entertain the complaint she drafted.

119. Brinson learned from other members that Tesarz assisted Ritter in drafting the complaint.

120. The faction on the Board supporting Ritter held a hearing suspending Brinson from membership, thereby, removing her as newly elected Vice-President.

121. Hoskins, as President, exercising his duties of care, obedience and loyalty retained a Credentialed Parliamentarian, Russell A. Guthrie, PRP to issue an Opinion letter on the legality of the disciplinary hearing. (*Plaintiff's Exhibit "D", Parliamentarian Guthrie's first Parliamentary Opinion*).

122. Parliamentarian Guthrie's interpretation of the MASCUSA Bylaws determined the disciplinary action to be illegal.

123. In response Ritter and her faction retained their own Parliamentarian to issue an Opinion letter. Parliamentarian Barbara Proctor issued an Opinion letter narrow in scope addressing a different provision of the Bylaws. A debate ensued on the Board over the two different Parliamentary Opinions. As a result, Parliamentarian Proctor issued a second Opinion. Once again, the Opinion was narrow in scope and did not address the legality of the disciplinary action. (*Plaintiff's Exhibit "D", Parliamentarian Barbara Proctor's Parliamentary Opinions*).

124.    The MASCUSA Board continued to maintain that the disciplinary action was legal, ignoring Parliamentarian Guthrie's Opinion.

125.    As a result of the debate over the correct Parliamentary Opinion, Ritter, and her faction on the Board, prevented Brinson from assuming the duties of Vice-President.

126.    In response to the stonewalling tactics of Ritter, and her faction, Brinson retained Nancy Ferguson-Guttenberg. Esq. (hereinafter referred to as "Guttenberg"), an attorney licensed in the State of New York, with forty years expertise in AKC disciplinary actions.

127.    Upon review of the minutes and bylaws, Guttenberg determined that the Opinion of Parliamentarian Guthrie was correct in that Parliamentarian Proctor had not addressed the issue of the legality of the disciplinary action.

128.    Ritter and her faction on the Board ignored the Parliamentary Opinion of Guthrie and legal opinion of Guttenberg.

129.    Brinson and Hoskins instructed Guttenberg to file an action in New York Supreme Court to resolve the dispute over which Parliamentary Opinion was correct.

130.    The action was filed against Ritter and the Board members composing her faction.

131.    The Insurance Carrier for MASCUSA assigned Vincent Suba, an attorney licensed in the State of the New York, to represent Ritter's faction on the Board.

132.    Ritter is not covered by the Directors and Officers Policy in that she, as an AKC Delegate, is not an Officer or Director.

133.    Vice-President and Senior Legal Counsel Heather McManus was forwarded a copy of the Complaint.

134.    Attorney Guttenberg and Attorney Suba engage in settlement discussions to resolve the Board dispute over the legality of the disciplinary action.

135.    AKC Vice-President and Senior Legal Counsel Heather McManus was advised that the attorneys were engaged in settlement discussions.

136.    Tesarz, despite the court case, entertains jurisdiction over Winston's complaint issuing a decision suspending Hoskin.

137.    Guttenberg objects to the AKC suspension on Hoskin referencing the Parliamentary Opinion of Guthrie.

138.    Tesarz then drafts the charges to be preferred by the AKC against Hoskin for review by the AKC Trial Board.

139.   Tesarz is not a Parliamentarian nor an attorney licensed in any State, let alone New York. She applies the same flawed logic to the analysis of MASCUSA's Constitution and Bylaws to the Charter and Bylaws of the AKC.

140.   Hoskins hires two additional Parliamentarians to review Tesarz's Opinions interpreting both the Charter and Bylaws of AKC and the Constitution and Bylaws of MASCUSA. Both Parliamentarians are nationally recognized experts.  C.J. Calvin is the Parliamentarian for the National Association of Parliamentarians and the House of Representatives for the State of Oklahoma.  Steve Britton was the National Association of Parliamentarian's advisor on Professional and Member Misconduct.  Now three expert Parliamentarians uniformly disagree with Tesarz's Opinions. All agree that the disciplinary action of Brinson violated MASCUSA's Constitution and Bylaws and the Disciplinary action of Hoskins violated AKC's Charter and Bylaws.

141.   The AKC, relying only on Tesarz's Opinions, pursues its complaint against Hoskins, citing a total of 11 violations of both AKC's Charter and Bylaws and MASCUSA's Constitution and Bylaws.

142.   In light of the sudden interjection of the AKC into the litigation, Guttenberg and Suba agree that there is no point in continuing negotiations for settlement.

143.   Guttenberg had requested a Trial Board from the AKC, however, determined that due to the failure of Winston to sign and notarize the complaint that the entire proceeding was fatally flawed.

144.   The present case was filed in Federal Court to address AKC's violations of AKC's Charter and Bylaws and MASCUSA's Constitution and Bylaws.

145.   Brinson, as Vice-President of MASCUSA, has sustained immediate and irreparable damage from Tesarz's violation of her duty of care, obedience and loyalty resulting in the abridgement of Brinson's AKC rights and privileges.

146.   Brinson, as Vice-President of MASCUSA, has sustained immediate and irreparable damage from Tesarz's violation of her duty of care, obedience and loyalty resulting in the abridgment of Brinson's rights and privileges as a member of MASCUSA under MASCUSA'S Constitution and Bylaws.  Due to Tesarz's actions, Brinson has been suspended from her elected office of Vice-President of MASCUSA.

147.   Brinson prays for relief from the immediate and irreparable damage done by Tesarz's abridgement of her rights and privileges as a member under the AKC's Charter and Bylaws and MASCUSA Constitution and Bylaws.

**SEVENTH CAUSE OF ACTION**
**TESARZ'S BREACHS HER**
**DUTY OF CARE, OBEDENCE AND LOYALTY TO**
**HOSKINS AS PRESIDENT OF MASCUSA**

148.    Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, and 106 through 147 with the same force and effect as if fully set forth herein.

149.    Hoskins, as President of MASCUSA, prays for relief from the immediate and irreparable damage done by Bri Tesarz;s violation of the duty of care, obedience and loyalty resulting in the abridgement of his rights and privileges as a member under the AKC's Charter and Bylaws and MASCUSA Constitution and Bylaws.

**EIGHTH CAUSE OF ACTION**
**TESARZ'S**
**TORTIOUS INTERFERENCE WITH CONTRACT**

150.    Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, and 149 with the same force and effect as if fully set forth herein.

151.    The Charter of the AKC provides in relevant parts that:

> SECTION 2. The objects of the corporation shall be to adopt and enforce uniform rules regulating and governing dog shows and field trials, to regulate the conduct of persons interested in exhibiting, running, breeding, registering, purchasing and selling dogs, to detect, prevent and punish frauds in connection therewith, to protect the interests of its members, to maintain and publish an official stud book and an official kennel gazette, and generally to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs. And for these purposes it shall have power to adopt a constitution, bylaws, rules and regulations, and enforce the same by fines and penalties, which it shall have the right to collect and enforce by suit, or by suspension or expulsion from membership, or by a suspension or denial of any or all of the privileges of said corporation. It may, from time to time, alter, modify or change such constitution, bylaws, rules or regulations.

The AKC is the only purebred registry in the United States with an ongoing routine kennel inspection program. The AKC has a dedicated team of field agents who visit kennels to help breeders while ensuring the proper care and conditions of AKC-registered dogs and verify that breeders are maintaining accurate records for their dogs. Since 2000, AKC field agents have conducted over 70,000 inspections nationwide.

The Compliance Department is charged with the protection of the integrity of the AKC purebred dog registry. The Compliance Department also handles disciplinary matters within the AKC. The Investigations & Inspections Department conducts inspections of breeders and pet stores to ensure they properly maintain their dogs, kennels, and records to support the registration applications submitted to the AKC.

Routine AKC field inspections involve several steps:

Field agents begin every visit with a tour of the overall facility checking that the dogs as well as the condition of their environment are in good order. Field agents also check the dogs for proper identification, microchip, tattoo or collar with a tag.

After a thorough look at the dogs the field agent will review the breeder's records, often providing the breeder with options on how to maintain hard copies in addition to using the convenient AKC online record system. Breeders are expected to maintain records for at least five years.

Through kennel visits, inspectors seek to work with breeders to help correct any deficiencies, as well as help new breeders develop effective practices and procedures.

If an inspector finds minor deficiencies, the issues are noted and discussed with the breeder in an effort to help the breeder while at the same time meeting AKC's requirements in the future. While the AKC does not have penal or regulatory authority, breeders who have major kennel deficiencies may lose AKC privileges (ability to register dogs or compete in events). In some cases, fines will be imposed, AKC privileges may be suspended and appropriate law enforcement authorities contacted. The standard penalty for anyone convicted of animal cruelty involving dogs is a 10-year suspension and a $2,000 fine.

152. Suffice to say, Tesarz has direct knowledge of every contract that a dog breeder makes in that the AKC registers purebred dogs issuing, registration papers reflecting when a dog breeder and buyer register a purebred dog or transfer ownership rights.

153. By issuing a suspension, Tesarz is able to nullify any contract that a breeder has with any puppy buyer.

154. In the State of New York, to establish a claim for tortious interference with contract, a plaintiff must establish the following: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the breach of that contract; and (4) damages.

155. An "essential element" of a claim for tortious interference with contract "is that the breach of contract would not have occurred but for the activities of the defendant."

156. Hoskins, as an avid and nationally renowned breeder of the Miniature American Shepherds, has engaged in the industry practice in the sport of purebred dogs of maintaining a puppy buyer list.  The list serves to reserve a puppy in advance of whelping with a required deposit and contract.  This reservation, deposit and contract ensure the buyer will receive a purebred dog from the breeder.  In Hoskins case, the puppy buyers had reserved and contracted for an AKC registered purebred Miniature American Shepherd.

157. Hoskins entered into contracts for sale with puppy buyers for AKC registered Miniature American Shepherd that would be registered and be transferrable to the puppy buyer.

158. Tesarz had personal knowledge of the contracts for sale by virtue of their registration and notice of transfer.

159. Tesarz frustrated Hoskins' registration, sale and transfer of his Miniature American Shepherds to his puppy buyers by suspending him from the privileges of AKC based on an incorrect, conflicted and biased interpretation of the AKC Charter and Bylaws. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

160. When AKC was notified that the suspension was unjust abridging Hoskins' rights and privileges guaranteed under the AKC's Charter and Bylaws and MASCUSA Constitution and Bylaw and that the illegal suspension would frustrate Hoskins ability to fulfill his contract, Heather McManus, Senior Vice-President and legal Counsel for the AKC, informed Hoskins and Guttenberg that he had the permission of AKC to not only register his litter of puppies, but transfer them. Although Heather McManus granted Hoskins, the right and privilege Tesarz ignored McManus's grant of rights and privileges.  Tesarz went outside the scope of her duty of care, obedience and loyalty to AKC, informing Hoskin that his suspension prohibited transfer of the puppies. In essence, Tesarz allowed registration, yet prohibited transfer.

161. Tesarz's intentional prohibition of the transfer of puppies directly caused Hoskins to breach his contracts with the puppy buyers.

162.  Hoskins had contracts with puppy buyers for the sale of puppies, thereby satisfying the first element for tortious interference of a contract.

163.  Tesarz knew about the existence of contracts, thereby satisfying the second element for tortious inference of a contract.

164.  Tesarz effectuated Hoskins suspension from AKC by waiving Bylaws and breaching Bylaws knowing that the suspension would cause Hoskins to breach his contracts, losing his puppy sales.

165.  Hoskins, as President of MASCUSA, prays for relief from the immediate and irreparable damage done by Bri Tesarz's abridgement of his rights and privileges as a member under the AKC's Charter and Bylaws and MASCUSA Constitution and Bylaws causing him to breach his contracts losing his puppy sales.

**NINTH CAUSE OF ACTION**
**GINA DINARDO'S**
**LIBEL OF HOSKINS AS PRESIDENT**

166.  Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, and 151 through 165 with the same force and effect as if fully set forth herein.

167.  On January 9th, 2024, Tesarz, through First Class Certified Mail and through Electronic Email, submitted to Hoskins alleged charges for his inappropriate, abusive, or foul language and for conduct prejudicial to the sport of pure-bred dogs. From January 9th 2024, to March 11, 2024, AKC was notified on numerous occasions by Guttenberg that the charges alleged in Winston's Complaint were invalided and illegal, providing legal arguments and expert Parliamentary Opinions from three separate credentialed parliamentarians. Despite numerous warnings, pleas for reconsideration, and court filings within the State of New York Supreme Court, Albany County, against the illegal Determination of the Board of the MASCUSA, AKC took it upon themselves to exercise jurisdiction preempting the Courts of New York.

168.  On March 11, 2024, DiNardo, representing the AKC, reissued the Charges against Hoskins. In said reissuance, DiNardo, acting as the Executive Secretary for the AKC, published the charges to not only Hoskins and Guttenberg, but also to Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, the Trial Board overseeing the charges.

169.  No quasi-judicial privilege applies to this Trial Board proceeding when the entire disciplinary proceeding is tainted by illegality. The Complaint that Winston filed is neither signed nor notarized. Further, Winston violated MASCUSA's Bylaws by using MASCUSA's stationary and filing as Treasurer without vote or approval of the Board, which violates the Constitution and Bylaws of the MASCUSA. The Complaint by

Winston would have had to have been filed by the Corresponding Secretary upon vote by the entire board. Tesarz, despite being notified on numerous occasions regarding the violations proceeded with the Disciplinary Actions.

170.   Thereafter, Guttenberg informed Heather McManus, Vice-President and Senior Legal Counsel for the AKC that the Disciplinary Action conducted by MASCUSA was invalid. Hence, AKC was made aware of not only the legal proceeding in New York Supreme Court, the Parliamentary Opinions regarding the illegal disciplinary action, but also that their conduct was violating AKC's Charter and Bylaws.

171.   AKC pressed on, despite the warnings from Guttenberg and reissued the charges on March 11, 2024. This conduct invalidates any review by a trial board in that the entire record composed by Tesarz is tainted.

172.   In DiNardo's publication to Hoskins, Guttenberg, Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, DiNardo published the count which states **"he used inappropriate, abusive, or foul language"** was made with actual malice and with a reckless disregard for the truth.  The statement is disparaging, defamatory and libel per se. (*Plaintiff's Exhibit "I ", DiNardo letter dated March 11, 2024).*

173.   At the time the statement was made, DiNardo representing AKC, knew the statement was false due to the Parliamentarian's Opinion letters submitted to AKC for review. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

174.   The publication that Hoskins **"used inappropriate abusive or foul language"** damaged the good name and reputation of Hoskins as a contract negotiator, breeder and President of the MASUCSA.

175.   Based on DiNardo's libelous publication, which was made with actual malice and reckless disregard for the truth, Hoskins demands $100,000.00 reflecting the damage to his reputation based on DiNardo's libelous publication which was made with actual malice and reckless disregard for the truth.

**TENTH CAUSE OF ACTION
GINA DINARDO'S
LIBEL OF HOSKINS AS AN INDIVIDUAL**

176.   Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151

through 165, and 167 through 175 with the same force and effect as if fully set forth herein.

177. On January 9ᵗʰ, 2024, Tesarz, through First Class Certified Mail and through Electronic Email, submitted to Hoskins alleged charges for his inappropriate, abusive, or foul language and for conduct prejudicial to the sport of pure-bred dogs. From January 9ᵗʰ 2024, to March 11, 2024, AKC was notified on numerous occasions by Guttenberg that the charges alleged in Winston's Complaint were invalided and illegal, providing legal arguments and expert Parliamentary Opinions from three separate credentialed parliamentarians. Despite numerous warnings, pleas for reconsideration, and court filings within the State of New York Supreme Court, Albany County, against the illegal Determination of the Board of the MASCUSA, AKC took it upon themselves to exercise jurisdiction preempting the Courts of New York.

178. On March 11, 2024, DiNardo, representing the AKC, reissued the Charges against Hoskins. In said reissuance, DiNardo, acting as the Executive Secretary for the AKC, published the charges to not only Hoskins and Guttenberg, but also to Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, the Trial Board overseeing the charges.

179. No quasi-judicial privilege applies to this Trial Board proceeding when the entire disciplinary proceeding is tainted by illegality. The Complaint that Winston filed is neither signed nor notarized. Further, Winston violated MASCUSA's Bylaws by using MASCUSA's stationary and filing as Treasurer without vote or approval of the Board, which violates the Constitution and Bylaws of the MASCUSA. The Complaint by Winston would have had to have been filed by the Corresponding Secretary upon vote by the entire board. Tesarz, despite being notified on numerous occasions regarding the violations proceeded with the Disciplinary Actions.

180. Thereafter, Guttenberg informed Heather McManus, Vice-President and Senior Legal Counsel for the AKC, that the Disciplinary Action conducted by the MASCUSA was invalid. Hence, AKC was made aware of not only the legal proceeding in New York Supreme Court, the Parliamentary Opinions regarding the illegal disciplinary action, but also that their conduct was violating their own Charter and Bylaws.

181. AKC pressed on, despite the warnings from Guttenberg and reissued the charges on March 11, 2024. This conduct invalidates any review by a trial board in that the entire record composed by Tesarz is tainted.

182. In DiNardo's publication to Gary Hoskins, Nancy Guttenberg, Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, DiNardo published the count which stated **"he used inappropriate, abusive, or foul language".** (*Plaintiff's Exhibit "I" DiNardo letter dated March 11, 2024*).

183. DiNardo when making this disparaging and defamatory statement, published it.

184.    The statement is false, and at the time it was it was made, DiNardo representing AKC knew the statements were false due to the Parliamentarians Opinion letters. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

185.    The publication that Hoskins "**used inappropriate abusive or foul language**" damaged the good name and reputation of Hoskins as a member of the MASUCSA.

186.    Based on DiNardo's libelous publication, which was made with actual malice and reckless disregard for the truth, Hoskins demands $100,000.00 reflecting the damage to his reputation as a Grain Contract Negotiation Agent and Breeder.

## ELEVENTH CAUSE OF ACTION
## GINA DINARDO'S
## <u>LIBEL OF HOSKINS AS PRESIDENT</u>

187.    Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151 through 165, 167 through 175, and 177 through 186 with the same force and effect as if fully set forth herein.

188.    In DiNardo's publication to Gary Hoskins, Nancy Guttenberg, Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, DiNardo published the count which stated "**he violated the MASCUSA's Constitution and Bylaws**". (*Plaintiff's Exhibit "I" DiNardo letter dated March 11, 2024).*

189.    DiNardo when making this disparaging and defamatory statement, published it.

190.    The statement is false, and at the time it was it was made, DiNardo, representing AKC, knew the statements were false due to the Parliamentarians' Opinion letters. (*Plaintiff's Exhibit "I", Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

191.    The publication that Hoskins "**he violated the MASCUSA's Constitution and Bylaws**" damaged the good name and reputation of Hoskins as a member of the MASUCSA.

192. Based on DiNardo's libelous publication which was made with actual malice and reckless disregard for the truth, Hoskins demands $100,000.00 reflecting the damage to his reputation as a President of MASCUSA.

## TWELFTH CAUSE OF ACTION
## GINA DINARDO'S
## <u>LIBEL OF HOSKINS AS INDIVIDUAL</u>

193. Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151 through 165, 167 through 175, 177 through 186, and 188 through 192 with the same force and effect as if fully set forth herein.

194. In DiNardo's publication to Gary Hoskins, Nancy Guttenberg, Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, DiNardo published the count which stated **"he violated the MASCUSA's Constitution and Bylaws".** (*Plaintiff's Exhibit "I", DiNardo letter dated March 11, 2024*)

195.  DiNardo, when making this disparaging and defamatory statement, published it.

196. The statement is false, and at the time it was made, DiNardo, representing AKC, knew the statements were false due to the Parliamentary Opinion letters.

197. The publication that Hoskins "**he violated the MASCUSA's Constitution and Bylaws**" damaged the good name and reputation of Hoskins as a member of the MASUCSA.

198. Based on DiNardo's libelous publication, which was made with actual malice and reckless disregard for the truth, Hoskins demands $100,000.00 reflecting the damage to his reputation as a Grain Contract Negotiation Agent, breeder and member of MASCUSA.

## THIRTEENTH CAUSE OF ACTION
## GINA DINARDO'S
## <u>LIBEL OF BRINSON AS VICE – PRESIDENT</u>

199. Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151

through 165, 167 through 175, 177 through 186, 188 through 192, and 194 through 198 with the same force and effect as if fully set forth herein.

200.　In DiNardo's publication on March 11, 2024 to Hoskins, Guttenberg, Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, DiNardo published the statement "**Carol Brinson, of her six-month suspension despite no avenues for Brinson to appeal**". (*Plaintiff's Exhibit "I", DiNardo letter dated March 11, 2024*).

201.　DiNardo when making this disparaging and defamatory statement, published it with actual malice and reckless disregard for the truth in that she had been provided with copies of all the Parliamentary Opinions determining the disciplinary action to be illegal. DiNardo was fully aware of the fact that Brinson had not been suspended and made the publication despite this knowledge pursuing Brinson's suspension as member, and removal as Vice -President.

202.　The statement is false, and at the time it was it was made, DiNardo representing AKC knew the statements were false due to the all the Parliamentarian's Opinion letters. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024*).

203.　The publication that Brinson "**Carol Brinson, of her six-month suspension despite no avenues for Brinson to appeal**" damaged the good name and reputation of Brinson as a nurse and as the newly elected Vice-President of MASUCSA.

204.　Based on DiNardo's libelous publication, which was made with actual malice and reckless disregard for the truth, Brinson demands $100,000.00 reflecting the damage to her reputation as a nurse, breeder and damage to her as Vice-President of MASCUSA.

### FOURTEENTH CAUSE OF ACTION
### GINA DINARDO'S
### LIBEL OF BRINSON AS AN INDIVIDUAL

205.　Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151 through 165, 167 through 175, 177 through 186, 188 through 192, 194 through 198, and 200 through 204, with the same force and effect as if fully set forth herein.

206.　In DiNardo's publication to Hoskins, Guttenberg, Theresa Dowell Esq., Kathi Brown and Lauri Maulucci, she made the statement "**Carol Brinson, of her six-month suspension despite no avenues for Brinson to appeal**". (*Plaintiff's Exhibit "I" DiNardo letter dated March 11, 2024*).

207.  DiNardo when making this disparaging and defamatory statement, published it with actual malice and reckless disregard for the truth.  The statement is false, and at the time it was it was made, DiNardo, representing AKC, knew the statements were false due to receiving copies of all the Parliamentary Opinion letters. (*Plaintiff's Exhibit "D" Parliamentarian Russell A. Guthrie's, PRP, Opinion letters, dated December 16, 2023, January 30, 2023 and March 21, 2024, and January 30, 2024, Parliamentarian Barbra Proctor, PRP, Opinion letter, dated February 22, 2023 and March 2, 2023, Parliamentarian Steven Britton, PRP, Opinion letter, dated March 20, 2024, and Parliamentarian C.J. Cavin, Esq. PLLC, Opinion letter, dated March 21, 2024).*

208.  The publication by DiNardo which stated "**despite Brinson's suspension**" damaged the good name and reputation of Brinson as a nurse, breeder and member of the MASUCSA.

209.  Based on DiNardo's libelous publication, which was made with actual malice and reckless disregard for the truth, Brinson demands $100,000.00 reflecting the damage to her reputation as a nurse, breeder and member of MASCUSA.

**FIFTEENTH CAUSE OF ACTION
DENNIS SPRUNGS'S BREACH OF THE CORPORATE
DUTY OF CARE, OBEDENCE AND LOYALTY TO
<u>VICE-PRESIDENT BRINSON</u>**

210.  Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39 through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151 through 165, 167 through 175, 177 through 186, 188 through 192, 194 through 198, 200 through 204, and 206 through 209 with the same force and effect as if fully set forth herein.

211.  Sprung is the President of the AKC which is a not-for-profit incorporated in the State of New York. Under the New York State Not-For-Profit Statutes and case law interpreting it, there is a duty of care, obedience and loyalty that is owed by the corporation, through its Officers, Directors and employees to members it serves.  In this instance MASCUSA. The duties of care, obedience and loyalty are also by extension owed to participants in AKC sanctioned events through AKC approved member and licensed clubs.

212.  The AKC through its Charter, Bylaws, Rules and Regulations exercises jurisdiction over Member and Licensed clubs and participants in AKC sponsored events. This jurisdiction extends to the registration of purebred dogs in that the AKC enjoys a monopoly in the registration of purebred dogs and transfer of purebred dogs.

213.  As a not-for-profit incorporated in the State of New York, the duties of care, obedience and loyalty ensure that disciplinary actions are conducted pursuant to AKC's Charter, Bylaws, Rules and Regulations.

214.   Sprung has breached his duties of care, obedience and loyalty in failing to insure that
       employee Teserz conducted a disciplinary action pursuant to AKC's Charter, Bylaws,
       Rules and Regulations that mandate that Parliamentary Procedure and Robert's Rules of
       Order are applied to every disciplinary action.

215.   Sprung has a long history of failing in his duty of care, obedience and loyalty regarding
       disciplinary actions. Specific examples where the participants in the sport have been
       injured and damaged by Sprung's failure, include, but not limited to, Nadice Mitchell,
       African American exhibitor attacked at an AKC sponsored dog show where no bench
       hearing was called upon filing of a complaint pursuant to AKC's Rules and Regulations.
       The action was brought to the attention of Tesarz and no action was taken; Jessie
       Barringer, professional handler, openly gay, attacked at an AKC sponsored dog show
       where no bench hearing was called upon filing of a complaint pursuant to AKC's Rules
       and Regulations. The action was brought to the attention of Tesarz and no action was
       taken; Katie Edwards, who availed herself of an AKC Trial Board to appeal a disciplinary
       action. The Chair of the Trial Board, and attorney, failed to even have the other two
       members of the Trial Board sign the decision. Despite the failure to follow AKC Rules
       and Regulations, the AKC published a suspension in its Gazette, a publication serving the
       sport. These are examples of minor issues in the failure of Sprung's exercise of his duties
       of care, obedience and loyalty. Sprung as the President of AKC has the duties of care,
       obedience and loyalty to ensure the safety of the participants of the sport.  These duties
       also extend to fair elections and fair disciplinary actions.

216.   Brinson, as Vice-President of MASCUSA, prays for relief from the immediate and
       irreparable damage done by Sprung's violation of the duty of care, obedience and loyalty
       resulting in the abridgement of her rights and privileges as a member and Vice-President
       under the AKC's Charter and Bylaws and MASCUSA Constitution and Bylaws.

## SIXTEENTH CAUSE OF ACTION
## DENNIS SPRUNGS'S BREACH OF THE CORPORATE
## DUTY OF CARE, OBEDENCE AND LOYALTY TO
## PRESIDENT HOSKIN

217.   Plaintiffs Hoskins and Brinson re-allege the allegations contained in 13 through 37, 39
       through 41, 43 through 69, 71 through 86, 88 through 104, 106 through 147, 149, 151
       through 165, 167 through 175, 177 through 186, 188 through 192, 194 through 198, 200
       through 204, 206 through 209 and 211 through 216 with the same force and effect as if
       fully set forth herein.

218.   Hoskins, as President of MASCUSA, prays for relief from the immediate and irreparable
       damage done by Sprung's violation of the duty of care, obedience and loyalty to Hoskins
       as President of MASCUSA resulting in the abridgement of his rights and privileges as a
       member and President under the AKC's Charter and Bylaws and MASCUSA
       Constitution and Bylaws.

*WHEREFORE, the Plaintiffs Gary Hoskins and Carol Brinson prays for judgment against the Defendants as follows:*

1. ON THE FIRST CAUSE OF ACTION, $20,000.00 together with interest thereon from April 26, 2022, plus plaintiff's costs and disbursements, including reasonable counsel fees.

2. ON THE SECOND CAUSE OF ACTION, $20,000.00 together with interest thereon from April 26, 2022, plus plaintiff's costs and disbursements, including reasonable counsel fees.

3. ON THE THIRD CAUSE OF ACTION, $20,000.00 together with interest thereon from April 22nd. 2022, plus plaintiff's costs and disbursements, including reasonable counsel fees.

4. ON THE FOURTH CAUSE OF ACTION, $20,000.00 together with interest thereon from April 22nd. 2022, plus plaintiff's costs and disbursements, including reasonable counsel fees.

5. ON THE FIFTH CAUSE OF ACTION, $20,000.00 together with interest thereon from April 22nd. 2022, plus plaintiff's costs and disbursements, including reasonable counsel fees.

6. ON THE SIXTH CAUSE OF ACTION, $30,000.00 together with interest thereon from April 22nd. 2016, plus plaintiff's costs and disbursements, including reasonable counsel fees.

7. ON THE SEVENTH CAUSE OF ACTION, $30,000.00 together with interest thereon from April 22nd. 2016, plus plaintiff's costs and disbursements, including reasonable counsel fees.

8. ON THE EIGHTH CAUSE OF ACTION, $25,000.00 together with interest thereon from April 22nd. 2016, plus plaintiff's costs and disbursements, including reasonable counsel fees.

9. ON THE NINETH CAUSE OF ACTION, $100,000.00 together with interest thereon from April 22nd. 2022, plus plaintiff's costs and disbursements, including reasonable counsel fees.

10. ON THE TENTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

11. ON THE ELEVENTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

12. ON THE TWELFTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

13. ON THE THIRTEENTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

14. ON THE FOURTEENTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

15. ON THE FIFTEENTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

16. ON THE SIXTEENTH CAUSE OF ACTION, $100,000.00 together with interest thereon from March 11, 2024, plus plaintiff's costs and disbursements, including reasonable counsel fees.

Dated: March 31, 2024

New York, New York

*Nancy Guttenberg*

**Nancy Ferguson-Guttenberg, Esq.**

NF5122
Main Office:
3248 Calle De Molina
Santa Fe, New Mexico 87507
(505) 505-5422
guttenbergnancy1994@gmail.com

Office at:
60 Park Terrace West, A-61
New York, New York
10034-0758